UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIA STEWART,

      Plaintiff,

v.

COUNTY OF SAGINAW,

      Defendant.

_____/

Case No. 22-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, JULIA STEWART, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, COUNTY OF SAGINAW, stating as follows:

## COMMON ALLEGATIONS

1.     That Plaintiff is a resident of the County of Bay, State of Michigan and is otherwise domiciled in the State of Michigan.

2.     That Defendant is a municipal corporation incorporated under the laws of the State of Michigan and is otherwise domiciled in the State of Michigan.

3.     That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4.     That Plaintiff is a Caucasian female.

5.     That Defendant employed Plaintiff as the Traffic Supervisor in the 70th District Court.

6.     That as Traffic Supervisor, Plaintiff frequently worked with court staff, including judicial assistants.

7.     That when Plaintiff would assist court staff members, Plaintiff would often joke that the staff member who received assistance owed her a chocolate chip cookie or make statements to the effect "that will be another chocolate chip cookie."

8.     That on or about January 14, 2021, Plaintiff assisted a co-worker with a question the co-worker had and during the conversation, joked that the co-worker owed her a chocolate chip cookie.

9.     That said co-worker happened to be African American.

10.    That the co-worker grossly misunderstood Plaintiff and incorrectly believed that Plaintiff's jocular request for a cookie was a reference to her race.

11.    That said co-worker filed a complaint of discrimination with

Defendant.

12.   That on or about January 15, 2021, Plaintiff learned of the co-worker's complaint and was mortified and, as such, sought to apologize to said co-worker.

13.   That on said date, Plaintiff did speak with the co-worker, sincerely apologized for making the co-worker feel uncomfortable, and thanked the co-worker for speaking with Linda James, District Court Administrator, explaining that if something Plaintiff had said offended her or made her uncomfortable, Plaintiff would want to stop engaging in any such behavior.

14.   That even though Defendant's policies require two county employees to investigate complaints of discrimination, Defendant hired an attorney, Tobin Dust of O'Neill, Wallace, and Doyle, P.C., to investigate the complaint.

15.   That in February 2021, Mr. Dust interrogated Plaintiff in the presence of her union representative in such an aggressive manner that her union representative commented on how bellicose the questioning was.

16.   That Plaintiff subsequently heard from Ms. James that "they" had finished the investigation and it was not good without further explanation.

17.   That on or about March 26, 2021, Plaintiff and her union representative met with Ms. James, District Court Judge Elian E.H. Fichtner, and David Gilbert, an attorney with Gilbert & Smith, P.C.

18.   That at said meeting, Plaintiff was provided with a letter regarding

"Disciplinary Action" signed by Judge Fichtner and Ms. James.

19.    That the letter states that Plaintiff's reference to "Chocolate Chip" or "Chocolate Chip Cookie" "was intended to be a reference to an African American co-worker and was likely a reference to her race."

20.    That said letter fails to explain how such a comment could be a reference to an African American co-worker or said co-worker's race.

21.    That said letter further states that Plaintiff's apology to the co-worker was not sincere without explanation.

22.    That the letter further suggests that Plaintiff had used a racial slur, which she did not.

23.    That Defendant required Plaintiff (1) to review its Discrimination and Sexual Harassment Policy and its Standards of Conduct policy; (2) attend diversity training; and (3) serve a three-day suspension along with threatening further discipline.

24.    That by disciplining Plaintiff for violating its discrimination policy, Defendant branded Plaintiff a racist even though she never made any racially discriminatory statements.

25.    That Defendant did not sincerely believe Plaintiff violated said policies.

26.    That when Plaintiff returned to work after serving her suspension, on or about April 1, 2021, Ms. James jokingly questioned whether Plaintiff enjoyed her

time off.

27.    That Defendant pretextually disciplined Plaintiff because she is Caucasian.

28.    That Defendant would not have similarly disciplined a non-Caucasian individual for making the same statements.

29.    That Defendant's pretextual discipline of Plaintiff further demonstrated to her subordinate employees that one could make a bogus complaint about Plaintiff and then be able to misbehave with impunity, because Plaintiff would not be permitted to discipline as such discipline would be viewed by Defendant as retaliatory.

30.    That not only did Defendant brand Plaintiff a racist, but it also completely compromised Plaintiff's ability to run her department.

31.    That in fact over the course of the next three months, a group of three subordinate employees, who referred to themselves as "the gang," mistreated two co-workers so poorly without consequence that the two co-workers resigned or moved out of the department.

32.    That Defendant did not permit Plaintiff to discipline "the gang" or take other action to control her department.

33.    That in June 2021, Plaintiff discovered a note written by a member of "the gang," which stated, "two down, one to go."

34.     That Plaintiff immediately recognized that the "one to go" referenced herself.

35.     That Plaintiff reported the statement to Ms. James and the fact that it referred to Plaintiff; however, Ms. James did not take any action.

36.     That subsequent thereto, the three members of "the gang" began harassing and mistreating Plaintiff, making specific racially discriminatory comments towards Plaintiff.

37.     That an African American employee, Kanisha Jones, began openly referring to Plaintiff as the "White Devil" and "white trash," two racially discriminatory terms.

38.     That the "gang" continued to identify Plaintiff as the "White Devil," making additional comments about Plaintiff being "evil," "a fake bitch," and, when Plaintiff wore heels, stating "evil people wear heels."

39.     That on or about November 5, 2021, Plaintiff reported to Ms. James the way the three subordinate employees were treating her and explained that she did not know what to do.

40.     That Ms. James did not take any action in response to the discriminatory treatment Plaintiff had received.

41.     That on or about November 6, 2021, Plaintiff learned that one of the subordinate employees, Kelly Carroll, had made a Facebook post referencing

Plaintiff, referring to her as "a manipulative conniving fake phony evil bitch" and further stating, "The devil is busy but is never tired," continuing the ongoing trope of Plaintiff as the "White Devil."

42.    That on or about November 7, 2021, Plaintiff reported the Facebook post and how she felt unsafe working in such an environment to both Ms. James and District Court Judge Terry Clark.

43.    That Defendant did not take any action in response to Plaintiff's report and complaint.

44.    That on or about November 10, 2021, Plaintiff reported to Ms. James that Ms. Jones had been referring to her as the "White Devil."

45.    That Defendant did not take any action in response and did not similarly investigate whether Ms. Jones had violated the Discrimination and Harassment Policy.

46.    That Defendant tolerated the racial discrimination and harassment targeted at Plaintiff.

47.    That on or about November 15, 2021, and in retaliation for Plaintiff's complaints, Ms. Jones filed a formal complaint against Plaintiff.

48.     That the Saginaw County Courthouse subsequently closed for two weeks due to an outbreak of COVID-19.

49.    That on or about December 1, 2021, Ms. James provided Plaintiff with

a copy of the formal complaint filed by Ms. Jones, which contained several misrepresentations and fabrications.

50.     That Ms. James further informed Plaintiff that Mr. Dust would be investigating the complaint, and it would not be good for Plaintiff.

51.     That due to Defendant's failure to remediate the racially hostile work environment created by Plaintiff's subordinate employees and failure to investigate Plaintiff's complaints of discrimination, Plaintiff went on a leave of absence on December 2, 2021.

52.     That Plaintiff subsequently filed a formal Discrimination/Harassment Complaint against the three subordinate employees, "the gang," Ms. Jones, Ms. Carroll, and Tammy Biesze.

53.     That in said complaint, Plaintiff specifically complained and reported that she had been referred to as the "White Devil."

54.     That despite Defendant's further notice of the discrimination and harassment Plaintiff experience, Defendant failed to take any remedial action.

55.     That Plaintiff subsequently spoke with Ms. James about returning to work; however, Ms. James indicated that Plaintiff would be subjected to the same treatment.

56.     That Ms. James specifically told Plaintiff that it was not going to get any easier for Plaintiff and that she would have to "fight the fight."

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

57.     That due to Defendant's actions, including branding Plaintiff a racist, tolerating references to Plaintiff as the "White Devil," and its failures to remediate the racially hostile work environment, Defendant constructively discharged Plaintiff's employment.

58.     That Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign.

59.     That effective February 3, 2022, Plaintiff's employment ended with Defendant.

60.     That Defendant's actions constitute race discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

61.     That Defendant's actions constitute race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

62.     That Defendant's actions constitute retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act.

63.     That Defendant's actions constitute retaliation in violation of the Michigan Whistleblowers' Protection Act.

64.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or

retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

65. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

66. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

67. That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 15.363, MCL § 15.364, MCL § 37.2801, and MCL § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 & THE FOURTEENTH AMENDMENT

68. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 67 of her Common Allegations, word for word

and paragraph for paragraph, as if fully restated herein.

69.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

70.    That the Fourteenth Amendment provides, in part:

> No State shall . . . deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1.

71.    That both the Equal protection Clause and the concept of substantive due process contained with the Due Process Clause protect against intentional discrimination based on race.

72.    That claims brought under Section 1983 "must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

73.    That at all times material hereto, Defendant is a "person" as defined under Section 1983.

74.    That at all times material hereto, Defendant acted under the color of State law.

75.    That Defendant deprived Plaintiff of her right to be free from discriminatory treatment and harassment based on her race.

76.     That at all times material hereto, Defendant acted "with a discriminatory intent and purpose." *Boger v. Wayne County*, 950 F.2d 316, 324-325 (6th Cir. 1991).

77.     That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her race, Caucasian.

78.     That Defendant is that unusual employer that discriminates against the majority.

79.     That there was ongoing racial tension in the workplace as evidenced by prior complaints of racial mistreatment, Plaintiff's complaints of racially discriminatory comments, and Defendant's failures to remediate or address Plaintiff's complaints of racial discrimination and/or harassment.  See *Johnson v. Metro. Gov't Nashville & Davidson County, Tenn.*, 502 F. App'x 523, 536 (6th Cir. 2012).

80.     That at all times material hereto, Plaintiff was and is qualified for the position she held.

81.     That Defendant took adverse employment action against Plaintiff, including, but not limited to, constructively terminating her employment.

82.     That Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign.

83.     That Defendant indicated to Plaintiff that if she returned to work, she

would continue to experience similar treatment, it would not get any easier for Plaintiff, and Plaintiff would have to "fight the fight."

84.    That a reasonable person in Plaintiff's circumstances would have felt compelled to resign.

85.    That Plaintiff was treated differently than other similarly situated individuals outside her protected class.

86.    That Defendant did not investigate individuals outside of Plaintiff's protected class that made overtly racist comments in the workplace.

87.    That Defendant lacked any legitimate, nondiscriminatory reason for the adverse actions taken against Plaintiff.

88.    That any reasons proffered by Defendant for taking said adverse actions are pretextual in nature.

89.    That any reasons proffered by Defendant for taking said adverse actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the action taken.

90.    That Plaintiff was subjected to unwelcome harassment.

91.    That said harassment was based on Plaintiff's race.

92.    That Plaintiff was repeatedly referred to as the "White Devil."

93.    That said harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and/or create a racially abusive and hostile

work environment.

94.    That Plaintiff complained about the racial harassment, but Defendant failed to take any action to remediate the harassment.

95.    That Defendant knew and should have known about said harassment and failed to act.

96.    That at all times material hereto, Defendant acted pursuant to a policy or custom.

97.    That the discriminatory actions in question were taken by officials with final decision-making authority, which satisfies the policy or custom requirement. See *Mann v. Helmig*, 289 F. App'x 845, 848 (6th Cir. 2008).

98.    That Defendant is not entitled to rely upon any immunity as a municipal entity.  *See Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).

99.    That Defendant's actions constitute race discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

100.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional

amount to offset any negative tax consequences incurred as a result of recovery.

101.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

102.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

103.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 67 of her Common Allegations and paragraphs 68 through 102 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

104.   That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with

respect to employment, compensation, or a term, condition, or privilege of employment, because of race.  MCL § 37.2202(1)(a).

105.   That at all times material hereto, Defendant constitutes an "employer," as the Act defines said term.  MCL § 37.2201(1).

106.   That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her race, Caucasian.

107.   That Defendant is that unusual employer that discriminates against the majority.

108.   That at all times material hereto, Plaintiff was and is qualified for the position she held.

109.   That Defendant took adverse employment action against Plaintiff, including, but not limited to, constructively terminating her employment.

110.   That Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign.

111.   That Defendant indicated to Plaintiff that if she returned to work, she would continue to experience similar treatment, it would not get any easier for Plaintiff, and Plaintiff would have to "fight the fight."

112.   That a reasonable person in Plaintiff's circumstances would have felt compelled to resign.

113.   That Plaintiff was treated differently than other similarly situated

individuals outside her protected class.

114.   That Defendant did not investigate individuals outside of Plaintiff's protected class that made overtly racist comments in the workplace.

115.   That Defendant lacked any legitimate, nondiscriminatory reason for the adverse actions taken against Plaintiff.

116.   That any reasons proffered by Defendant for taking said adverse actions are pretextual in nature.

117.   That any reasons proffered by Defendant for taking said adverse actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the action taken.

118.   That Plaintiff was subjected to unwelcome harassment.

119.   That said harassment was based on Plaintiff's race.

120.   That Plaintiff was repeatedly referred to as the "White Devil."

121.   That said harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and/or create a racially abusive and hostile work environment.

122.   That Plaintiff complained about the racial harassment, but Defendant failed to take any action to remediate the harassment.

123.   That Defendant knew and should have known about said harassment and failed to act.

124.   That Defendant's actions constitute race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

125.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

126.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

127.   That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 37.2801 and MCL § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with

any and all legal and/or equitable relief this Court deems just.

## COUNT III – RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

128.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 67 of her Common Allegations, paragraphs 68 through 102 of Count I, and paragraphs 103 through 127 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

129.   That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for a person to retaliate or discriminate against a person because the person has opposed a violation of the Act or made a complaint under the Act.   MCL § 37.2701(a).

130.   That Plaintiff engaged in activity protected by the Act by opposing and complaining about a violation of the Act.

131.   That Plaintiff opposed and complained about being referred to as the "White Devil," a racially discriminatory term.

132.   That at all times material hereto, Defendant had knowledge of Plaintiff's protected activity.

133.   That Defendant took adverse employment action against Plaintiff, including, but not limited to, constructively terminating her employment.

134.   That Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign.

135.   That Defendant indicated to Plaintiff that if she returned to work, she would continue to experience similar treatment, it would not get any easier for Plaintiff, and Plaintiff would have to "fight the fight."

136.   That a reasonable person in Plaintiff's circumstances would have felt compelled to resign.

137.   That a causal connection exists between Plaintiff's protected activity and the adverse employment action.

138.   That Defendant lacked any legitimate, nondiscriminatory reason for the adverse actions taken against Plaintiff.

139.   That any reasons proffered by Defendant for taking said adverse actions are pretextual in nature.

140.   That any reasons proffered by Defendant for taking said adverse actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the action taken.

141.   That Defendant's actions constitute retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act.

142.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or

retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

143.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

144.   That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 37.2801 and MCL § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV – RETALIATION IN VIOLATION OF THE MICHIGAN WHISTLEBLOWERS' PROTECTION ACT

145.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 67 of her Common Allegations, paragraphs 68 through 102 of Count I, paragraphs 103 through 127 of Count II, and paragraphs 128 through 144 of Count III, word for word and paragraph for paragraph, as if fully

restated herein.

146.   That the Michigan Whistleblowers' Protection Act provides, in

pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate
> against an employee regarding the employee's compensation, terms,
> conditions, location, or privileges of employment because the
> employee, or a person acting on behalf of the employee, reports or is
> about to report, verbally or in writing, a violation or a suspected
> violation of a law or regulation or rule promulgated pursuant to the law
> of this state, a political subdivision of this state, or the United States to
> a public body, unless the employee knows that the report is false. . . .

MCL § 15.362.

147.   That at all times material hereto, Defendant was Plaintiff's "employer"

as defined by the Act.  MCL § 15.361(b).

148.   That at all times material hereto, Defendant and its employees are

public bodies as defined by the Act.  MCL § 15.361(d)(*iii*).

149.   That Plaintiff engaged in activity protected by the Act by reporting a

violation or a suspected violation of the Michigan Elliott-Larsen Civil Rights Act to

Defendant and several of its employees.

150.   That at all times material hereto, Defendant had knowledge of

Plaintiff's protected activity.

151.   That Defendant took adverse employment action against Plaintiff,

including, but not limited to, constructively terminating her employment.

152.   That Defendant deliberately made Plaintiff's working conditions so

intolerable that Plaintiff was forced to resign.

153.   That Defendant indicated to Plaintiff that if she returned to work, she would continue to experience similar treatment, it would not get any easier for Plaintiff, and Plaintiff would have to "fight the fight."

154.   That a reasonable person in Plaintiff's circumstances would have felt compelled to resign.

155.   That a causal connection exists between Plaintiff's protected activity and the adverse employment action.

156.    That Defendant lacked any legitimate, nondiscriminatory reason for the adverse actions taken against Plaintiff.

157.   That any reasons proffered by Defendant for taking said adverse actions are pretextual in nature.

158.   That any reasons proffered by Defendant for taking said adverse actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to justify the action taken.

159.   That Defendant's actions constitute retaliation in violation of the Michigan Whistleblowers' Protection Act.

160.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life

insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

161.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

162.   That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL § 15.363 and MCL § 15.364.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>April 8, 2022</u>        By:   <u>*/s/ Victor J. Mastromarco, Jr.*</u>
                                           VICTOR J. MASTROMARCO, JR. (P34564)
                                           KEVIN J. KELLY (P74546)
                                           Attorneys for Plaintiff
                                           1024 N. Michigan Avenue

Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIA STEWART,

     Plaintiff,                             Case No. 22-
                                             Hon.

v.

COUNTY OF SAGINAW,

     Defendant.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **DEMAND FOR TRIAL BY JURY**

     NOW COMES Plaintiff, JULIA STEWART, by and through her attorneys,

THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above

issues, unless otherwise expressly waived.

                               Respectfully submitted,
                               THE MASTROMARCO FIRM

Dated: <u>April 8, 2022</u>     By:   */s/ Victor J. Mastromarco, Jr.*
                               VICTOR J. MASTROMARCO, JR. (P34564)
                               KEVIN J. KELLY (P74546)

Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com